UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| PATRICIA FLORES,<br><br>                    Plaintiff,<br><br>   v.<br><br>WALMART STORES, INC., a Delaware corporation,<br><br>                    Defendant. | NO: 11-CV-0334-TOR<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is Defendant's Motion for Summary Judgment (ECF No. 16). This matter was heard without oral argument on October 31, 2012. The Court has reviewed the motion, the response, and the reply, and is fully informed.

## BACKGROUND

On or about August 10, 2011, Plaintiff Patricia Flores ("Flores") filed a Complaint against Defendant Walmart Stores, Inc. ("Walmart") in Adams County Superior Court alleging claims of breach of promise of specific treatment in

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

1  specific circumstances, and wrongful discharge in violation of public policy.  On
2  September 7, 2011, Walmart removed the case to the Eastern District of
3  Washington.  On March 8, 2012, the Court granted a stipulated motion to dismiss
4  only the wrongful discharge in violation of public policy claim.  ECF No. 11.
5  Presently before the Court is Defendant's Motion for Summary Judgment on the
6  remaining claim of breach of specific treatment in specific circumstances.[1]

## FACTS

Walmart has an Open Door Policy that encourages employees "to bring suggestions, observations, problems or concerns to the attention of any supervisor or manager without fear of retaliation." Wilson Decl., ECF No. 20, Ex. A.  The policy further states that while Walmart "cannot promise that your views or opinions will always prevail, the open door process ensures that you will always be heard.  We will consider your views and opinions along with the views and opinions of other associates in making decisions that will improve the workplace and the company." *Id*.  Under the Open Door Policy, employees may choose to

---

[1] Flores's response brief indicates a belief that both claims asserted in her Complaint are still before the Court.  ECF No. 22 at 2.  However, pursuant to a stipulated motion filed by the parties, the Court entered an order dismissing that claim with prejudice.  ECF No. 11.  The only remaining claim before the Court is the breach of specific treatment in specific circumstances.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

raise issues or concerns with their supervisors or managers, and if the issue is not resolved, the employee may contact the next level of supervision. Defendant's LR 56.1 Statement of Facts in Support of its Motion for Summary Judgment, ECF No. 18 ("Def. SOF") at ¶ 4. An employee may also call an ethics hotline that is independent of Walmart if he or she has a concern related to the Statement of Ethics. *Id*. at ¶ 5. During her employment with Walmart, Flores was familiar with the Open Door Policy and used it on several occasions. *Id*. at ¶ 8.

Flores was also familiar with the Coaching for Improvement Policy, Walmart's progressive discipline policy. *Id*. at ¶ 11. The Coaching for Improvement Policy is used when an employee's "job performance fails to meet the reasonable expectations and standards for all associates in the same or similar position" or when "conduct violates a company policy or interferes or creates a risk of interfering with the safe, orderly, and efficient operation of our business." Wilson Decl., ECF No. 20, Ex. B. The three levels of progressive discipline include: a verbal and written coaching, Decision-Making Day, and termination. Def. SOF at ¶ 14. A supervisor or manager has discretion to determine the right "coaching level" on a case-by-case basis, up to and including termination. *Id*.

Flores worked at the Othello, Washington Walmart store from March 23, 2001 to April 8, 2011. *Id*. at ¶ 21. She was an Accounting Associate from June 2009 to April 8, 2011. Flores believed that the managers were not following the

proper Cash Fund Transfer ("CFT") procedures.[2]  *Id*. at ¶ 22.  The CFT procedures are guidelines for how Walmart employees should complete accounting transactions, including how money comes in and out of the accounting department. *Id*. at ¶ 18, 19.  Flores complained that the managers were processing customer satisfactions and removing money from registers without immediately securing the funds from the accounting office, rather than the allegedly common practice of placing a receipt in the register with a note stating the amount of money removed from the register.  *Id*. at ¶ 23.  She also raised concerns that managers were not having customers sign CFT logs when they received funds.  *Id*. at ¶ 24.  Flores utilized the Open Door Policy to bring these issues to Asset Protection Manager

---

[2] The parties dispute whether the CFT procedures relied on by Flores were up to date. Walmart contends that Flores' information was from a binder last updated in 2006, which was not the most current version of procedures.  Turner Decl., ECF No. 29, Ex. V. According to Walmart the procedures had long since been updated on its internal computer system (the "WIRE").  Flores responds that she was following the instructions received during her training at the Moses Lake Walmart store to protect cash assets, as well as written policy maintained in the accounting office. Flores Decl., ECF No. 25 at ¶ 3.  Further, Flores argues that she was never instructed that the binder kept in the office was out of date or that it was contrary to procedure found on the WIRE. *Id*. at ¶ 4.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4

Shane Morlan and Store Manager Mike Wilson. *Id*. at ¶ 25. Both managers testified that the CFT did not require immediate reconciliation of funds after completing a customer satisfaction, however, they agreed that it would be a good practice and they encouraged management team to follow this procedure.[3] Morlan Dep., ECF No. 19 at 51-55; Wilson Dep., ECF No. 19 at 78-80.

As an Accounting Associate, Flores was required to keep the safe closed and locked when she was not in the accounting office. *Id*. at ¶ 29. On August 25, 2010, Flores failed to lock the safe and received a written coaching. *Id*. at ¶ 30. Her written coaching stated that the next level of discipline could be a Decision Making day or termination. *Id*. On October 29, 2010, Flores left the safe door unlocked again and received a Decision Making day, as well as a warning that another violation of policy could result in termination. *Id*. at ¶ 32-33. After receiving this discipline, Flores utilized the Open Door Policy and met with Store Manager Wilson and Assistant Store Manager Silvia Martinez to discuss the discipline. *Id*. at ¶ 36.

---

[3] Flores disputes that management (Morlan and Wilson) had no problem with her raising issues about the CRT procedures. Pl. Response ¶ 9. Flores contends that Wilson was upset and wanted to know if she was threatening him. Also, Flores points to the fact that her last email on April 5, 2011 reporting a CFT violation by Wilson himself was sent two days before she was discharged. *Id*.

On March 30, 2011, Asset Protection Manager Morlan sent an email directing accounting employees to keep the inner accounting door closed at all times, and specifically directing that the accounting door could no longer be propped open with a bungee cord.[4]  *Id*. at ¶ 38.  Flores received the email and agreed that she would keep the door closed.  *Id*. at ¶ 39.  However, Flores testified that she felt this policy would be a hardship in completing work in the accounting

---

[4] There is great dispute as to whether there was actually a policy in place directing employees to keep the inner door closed prior to this email directive. Walmart contends that its employees followed the Key and Door Control Policy that the exterior and interior doors of the accounting office must remain locked at all times. Def. SOF at ¶ 37.  Flores responds that prior to the March 30th email directing employees to keep the door closed due to the difficulties getting work done in the close confines of the office, accounting employees routinely worked with the door open, and that managers had full knowledge of this practice. Pl. Response ¶ 11. Flores contends that Morlan unilaterally began enforcing this policy based on a company publication that Flores contends never existed in March of 2011. However, Walmart did provide the Court with a document entitled "National Priorities – Accounting Office Procedures," dated March 9, 2011, that directed the manager to verify via the videotape of the inner accounting office to ensure "that the rooms [sic] door is closed." Turner Decl., ECF No. 29, Ex. W.

office, and she sought a meeting with managers to protest the change in practice. Pl. Response at ¶ 15-16.  Five days later, Flores admittedly propped the inner door open with a bungee cord for 25 minutes. Def. SOF at ¶ 40.  Flores contends that it was necessary to keep the door open to effectively communicate about reconciling the registers that day. Pl. Response ¶ 17.  On April 5, 2011, Flores sent an email to Wilson informing him that money had been taken out of accounting twice without being documented in a cash fund transfer log, and that one of these instances was by Wilson himself.  Pl. Response at ¶ 9.  Assistant Store Manager Martinez reviewed video of Flores propping open the door, and after reviewing her prior discipline, Flores' employment was terminated.[5] Def. SOF at ¶ 41.  After Flores was terminated, she used the Open Door Policy to dispute her termination to Store Manager Wilson and he upheld the termination decision. *Id*. at ¶ 43.  Flores then met with both the Market Manager and the Market Human Resources Manager to

---

[5] Flores contends that although Martinez testified that she was the final decision maker, Morlan and Wilson were involved in the decision.  Pl. Response ¶ 12.  Morlan brought the video of the alleged violation to Martinez's attention, and Wilson testified that he participated in the initial decision to terminate Flores' employment.  *Id*.  In addition, Flores argues that Martinez was not Flores' regular supervisor and was only covering for the regular supervisor in that department who was out on leave.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 7

seek reconsideration of the decision, both of whom upheld the termination of Flores' employment. *Id*. at ¶ 44. Last, Flores called the third party Ethics hotline but she was informed that it was outside the scope of issues handled by that office. *Id*. at ¶ 45-46.

SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in

seek reconsideration of the decision, both of whom upheld the termination of Flores' employment. *Id*. at ¶ 44. Last, Flores called the third party Ethics hotline but she was informed that it was outside the scope of issues handled by that office. *Id*. at ¶ 45-46.

SUMMARY JUDGMENT STANDARD

The Court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in

favor of the non-moving party. *Id.* The Court views the facts, and all rational inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 327, 378 (2007).

## DISCUSSION

Under Washington's common law at-will employment doctrine, an employer may discharge an employee "for no cause, good cause or even cause morally wrong without fear of liability." *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 226 (1984). However, an employer's right to discharge an at-will employee can be contractually modified by employee handbooks or policy manuals. *See id.* at 228. Written materials may create a promise of specific treatment in specific situations, based on the equitable theory of justifiable reliance. *Quedado v. Boeing Co.*, 168 Wash. App. 363, 369 (2012); *see also Thompson*, 102 Wash.2d at 230 ("[i]f an employer…creates an atmosphere of job security and fair treatment with promises of specific treatment in specific situations and an employee is induced thereby to remain on the job and not actively seek other employment, those promises are enforceable components of the employment relationship.").

In order to establish an equitable theory of justifiable reliance, "the employee must prove (1) that a statement (or statements) in an employee manual or handbook or similar document amounts to a promise of specific treatment in specific situations, (2) that the employee justifiably relied on the promise, and (3)

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 9

that the promise was breached." *Id.* An employer may not be bound by these statements if they "state in a conspicuous manner that nothing contained therein is intended to be part of the employment relationship, and are simply general statements of company policy." *Thompson*, 102 Wash.2d at 231. Whether an employment document contains a promise of specific treatment in specific situations, whether it was justifiably relied on, and whether the promise was breached are questions of fact; but summary judgment may be appropriate if reasonable minds could reach only one conclusion. *See Burnside v. Simpson Paper Co.*, 123 Wash.2d 93, 104-05 (1994).

Walmart argues that the Open Door policy, the Coaching for Improvement policy, and the Cash Fund Transfer ("CFT") policy,[6] do not make promises of specific treatment and none of these policies were breached with respect to Flores. However, the only argument offered by Flores in opposition to summary judgment is that she relied on alleged promises made by Walmart in its Open Door Communications Policy that she could bring problems to the attention of management without retaliation, and that this promise was allegedly breached. ECF No. 22 at 3-4. Flores concedes that she did not plead an implied contract

---

[6] Flores' complaint does not allege that the CRT created a specific promise in specific situations. Thus, the Court limits its analysis to the Coaching for Improvement policy and the Open Door policy.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10

claim, so the Court will not consider Walmart's argument that there is no implied contract.

### A. Coaching for Improvement

Walmart contends that there is no evidence that the Coaching for Improvement policy contains promises of specific treatment in specific situations. ECF No. 17 at 9. Further, Walmart argues that the policy included a valid and enforceable disclaimer in bold typeface at the end of the policy. The disclaimer states that

> [t]his information does not create an express or implied contract of employment or any other contractual commitment. Walmart may modify this information at its sole discretion without notice, at any time, consistent with applicable law. Employment with Walmart is on an at-will basis, which means that either Walmart or the associate is free to terminate the employment relationship at any time for any or no reason, consistent with applicable law.

Wilson Decl., ECF No. 20, Ex. A. At her deposition, Flores testified that the Coaching for Improvement policy did not guarantee her employment, change the terms of her employment, or induce her to stay on the job. Flores Dep., ECF No. 19, Ex. O at 39-40. Flores also does not respond to any of Walmart's arguments regarding the Coaching for Improvement policy in her responsive briefing.

After an exhaustive review of the record, the Court cannot find even a scintilla of evidence indicating that the Coaching for Improvement policy contained a promise of specific treatment in specific situations, or that such a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

promise was violated by Walmart.  The policy indicates that levels of coaching may be skipped, depending on the particular situation, and that an employee may not receive two of the same level of coaching, but must instead proceed to the next level of coaching for a subsequent issue.  Wilson Decl., ECF No. 20, Ex. B.  The policy also states that a supervisor has discretion to determine the appropriate coaching level depending on the individual circumstances of the incident at issue.  *Id*.  Flores acknowledges that she did leave the safe unlocked on two separate occasions, and that she received a written coaching and a Decision-making day for these infractions of Walmart policy.  Def. SOF, ECF No. 18 at ¶ 31, 35.  These are two successive levels of "coaching" as provided for in the Coaching for Improvement policy.  ECF No. 20, Ex. B.  Flores also admitted that she left the door propped open for a period of time despite instruction from her supervisor that the door was to remain closed.  ECF No. 18 at ¶ 40.  This was Flores' third infraction of policy in the Accounting department.  According to the Coaching for Improvement policy, the final step in the progressive disciplinary scheme can be termination.

   Flores offers no evidence that the Coaching for Improvement policy included a promise of specific treatment in specific situations.  Rather, the policy repeatedly emphasizes that it is within the discretion of the supervisor or manager to determine the appropriate level of "coaching" in any particular situation.  *See*

*Drobny v. Boeing Co.*, 80 Wash. App. 97, 103 (1995) ("where an employment manual gives the employer discretion in applying the discipline procedures, courts have held as a matter of law that the manual does not provide a promise of specific treatment in a specific circumstance."). Furthermore, the Court finds absolutely no evidence that any promise was breached. Flores admittedly committed three separate infractions of Walmart policy, she was given several chances to improve her performance, and was ultimately terminated pursuant to the discretion accorded to her managers in the Coaching for Improvement policy. Thus, the Court finds that reasonable minds could only reach the conclusion that there was no promise of specific treatment in specific situations, and that no such promise was breached. *See Burnside*, 123 Wash.2d at 104-05.

### B. Open Door Policy

In order to prevail on a theory of justifiable reliance, Flores must demonstrate that a statement or statements in the Open Door Policy amounted to a promise of specific treatment in a specific situation. Flores narrows her argument to the theory that Walmart breached a "promise" in its Open Door Policy to not allow retaliation in response to the use of said policy. ECF No. 22 at 4. The Open Door Policy states that Walmart associates can "bring observations, problems, or concerns to the attention of any supervisor or manager without fear of retaliation"

and that "[r]etaliation for initiating an open door or cooperating in an investigation relating to any open door is strictly prohibited." Wilson Decl., ECF No. 20, Ex. A.

The first question before the Court is whether the anti-retaliation statement in the policy constituted a promise of specific treatment in specific situation, or whether it was merely a general statement of company policy. *See Thompson*, 102 Wash.2d at 231. Walmart cites to the *Thompson* and *Quedado* cases to support its argument that this type of language indicating that an employee will not be retaliated for bringing forth concerns has been upheld by courts as not constituting a specific promise. See *Quedado*, 168 Wash. App. at 370-71; *Thompson*, 102 Wash. App. at 224. In *Quedado*, the court found that defendant's "code of conduct," which included the statement that "[r]etaliation against employees who come forward to raise genuine concerns will not be tolerated," made no offer of new employment terms, "nor [did] it extend any specific promises as to how employees will be treated in specific situations." *Quedado*, 168 Wash. App. at 370. Flores argues that *Quedado* is distinguishable on its facts because the plaintiff in that case was not demoted for expressing any concerns and plaintiff never claimed that the anti-retaliation language was a promise of specific treatment. ECF No. 22 at 6-7. The Court finds this argument unavailing. While the facts in *Quedado* were certainly not identical to this case, that court specifically referenced the anti-retaliation language in its analysis of the issue, and inclusively found that the entire

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14

employer code, including the anti-retaliation language, did not amount to a specific promise.

Further, in *Thompson* the Washington Supreme Court specifically held that an employer could create an atmosphere of job security with "promises of specific treatment in specific situations" when an employee is induced to remain on the job and not seek other employment. *Thompson*, 102 Wash.2d at 230. However, Flores testified, and stipulated through counsel during her deposition, that the policies at Walmart did not guarantee her employment. Flores Dep., ECF No. 19 at 38-40. Nor does she argue in her responsive briefing that the alleged anti-retaliation promise induced her to remain on the job or not seek other employment. Therefore, the Court cannot find a promise of specific treatment that could become an enforceable part of the employment relationship and alter Walmart's common-law right to terminate Flores' employment at will.

Finally, an employer will not be bound by statements in employment policies if they

> specifically state in a conspicuous manner that nothing contained therein is intended to be a part of the employment relationship and are simply general statements of company policy… Moreover, the employer may specifically reserve the right to modify these policies or write them in a manner that retains discretion to the employer.

*Thompson*, 102 Wash.2d at 230-31. In order to be effective, a disclaimer must be effectively communicated to the employee, "i.e. there must be reasonable notice to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 15

the employee that the employer is disclaiming intent to be bound by what otherwise appear to be promises of employment conditions." *Swanson v. Liquid Air Corp.*, 118 Wash.2d 512, 529 (1992). Subsequent inconsistent representations and practices by an employer, including oral assurances, can negate the effect of a disclaimer. *Id*. at 533-34. The effectiveness of a disclaimer may be decided as a matter of law when reasonable minds cannot differ. *See Nelson v. Southland Corp.*, 78 Wash. App. 25, 30 (1995).

In practice Walmart's Open Door Policy actually contains two statements that could be read as "disclaimers" that emphasize the discretion retained by Walmart. First, the text of the Open Door Policy indicates that "[w]hile we cannot promise that your views or opinions will always prevail, the open door process ensures that you will always be heard." ECF No. 20, Ex. A. Further, at the end of the Open Door Policy, it states:

> This information does not create an express or implied contract of employment, or any other contractual commitment. Walmart may modify this information at its sole discretion without notice, at any time, consistent with applicable law. Employment with Walmart is on an at-will basis which means that either Walmart or the associate is free to terminate the employment relationship at any time for any or no reason, consistent with applicable law.

*Id*. Walmart argues that the disclaimer was effective because it was in bold type on the last page of each stand-alone policy. ECF No. 17 at 7. Walmart points out that employees can review the policy at any time on the company's internal WIRE

1  system.  Further, Walmart contends that policies that vest an employer with
2  discretion are not specific enough to negate an effective disclaimer.  *See Quedado*,
3  168 Wash. App. at 372.

4  Flores contends that the disclaimer is not conspicuous because it is in
5  smaller font than the rest of the policy and only appears at the very end of the
6  policy.  ECF No. 22 at 10.  She indicated that she did not read or realize there was
7  a disclaimer until it was pointed out during litigation.  Flores Decl., ECF No. 25 at
8  ¶ 2.  Flores also argues that Walmart specifically instructed its employees that they
9  could rely on anti-retaliation language when bringing concerns to their managers,
10 thus indicating that the disclaimer was not effective to "lead its employees away
11 from reliance on its promise."  ECF No. 22 at 10.

12 The Court finds no genuine issue of material fact as to whether the
13 disclaimer was effectively communicated to Flores.  Flores testified that she
14 received a copy of the Open Door policy during her orientation, was familiar with
15 the written Open Door policy, and had in fact utilized the Open Door policy on
16 multiple occasions.  ECF No. 19, Ex. O at 16-18.  She also testified that she
17 understood her employment was at-will.  *Id*.  While she did state that she did not
18 read the disclaimer until litigation on this matter ensued, there is considerable
19 evidence that she was very familiar with the terms of the Open Door policy and
20 used it on multiple occasions with no apparent difficulties.  The Open Door policy

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 17

is only two pages long, and the disclaimer, while it is in small print, is in bold typeface prominently displayed on the second page.

The Court is likewise unpersuaded by Flores' argument that specific instruction by Walmart management allegedly reinforcing that employees could rely on the anti-retaliation language in the policy somehow negated the terms of the disclaimer. In order to prove that the disclaimer was negated, Flores must provide examples that overcome the disclaimer such as "detailed grievance or disciplinary procedures to be taken before discharge and exclusive lists of reasons for discharge…., statements espousing job security, permanent, continuous, or future employment", or "contradictory employment practices." *Swanson*, 118 Wash.2d at 532. Flores offers no evidence of specific statements espousing job security, or any contradictory employment practices. Comments by the management that mirror the statements contained in the Open Door Policy could not be accurately described as "contradictory employment practices." *Id*.

For all of these reasons, the Court finds that reasonable minds could not differ in finding that the language in the Open Door Policy and the Coaching for Improvement Policy did not constitute a promise of specific treatment in specific situations.

///

///

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion for Summary Judgment, ECF No. 16, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment for the Defendant dismissing this action, and **CLOSE** the file.

**DATED** this 27th day of November, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge